UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| MALCOLM MEDLEY, )<br>)<br>    *Plaintiff*, )<br>)<br>v. )<br>)<br>CHARLOTTE A. BURROWS, CHAIR )<br>UNITED STATES EQUAL )<br>EMPLOYMENT OPPORTUNITY )<br>COMMISSION, )<br>)<br>    *Defendant.* )<br>) | Civil action no. _____ |

## CIVIL COMPLAINT FOR MONETARY AND EQUITABLE RELIEF

Plaintiff Malcolm Medley, by and through undersigned counsel, files this Complaint against the United States Equal Employment Opportunity Commission ("EEOC" or "Agency") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. ("Title VII") for discrimination, retaliation, and a hostile work environment.

### Jurisdiction and Venue

  1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically Title VII.

  2.  This Court has personal jurisdiction over the EEOC because it conducts significant business in this judicial district.

  3.  Venue in this district and division is appropriate pursuant to 28 U.S.C. § 1391 because the EEOC has significant and deliberate contacts with this district and division and because it is where most of the events giving rise to these claims occurred.

  4.  The D.C. Circuit held in *Wagner v. Taylor* that when appropriate, "Federal courts have the authority to enjoin, when appropriate, retaliatory transfers and other acts of reprisal

1

while the administrative or the judicial-review process is advancing." 836 F. 2d 566, 570-71 (D.C. Cir. 1987). The Court specifically noted that Congress did not intend to foreclose federal courts from providing injective relief. *Id*. at 572.

## Parties

5. Medley is a citizen of the United States and is domiciled in Roslindale, Massachusetts.

6. Defendant EEOC is headquartered in the District of Columbia and conducts significant business in the District of Columbia.

## Factual Allegations

7. Medley is an African American male.

8. Medley previously practiced employment law and corporate law and served as the chair of the Massachusetts Commission Against Discrimination.

9. In April 2011, the EEOC hired Medley as a director of the Miami district office, a Senior Executive Service ("SES") position. Nicholas Inzeo, director of the Office of Field Programs, served as Medley's direct supervisor. Medley oversaw most of Florida, Virgin Islands and Puerto Rico; these were under performing districts, which Medley helped improve.

10. From in or about September 2011 through in or about September 2015, the EEOC consistently issued Medley "Outstanding" or "Exceeded Expectations" performance ratings.

11. In or about April 2015, the EEOC appointed Medley to the position of Director, Field Coordination Programs, ES-0340-00, in the Office of Field Programs. This position was in Washington, D.C. where he reported to, and worked in-person with, Inzeo. While there was a one special assignment African American female who retained her SES designation from a previous assignment, Medley was the only African American SES senior level program

executive in the Washington, D.C. Office of Field Programs.

12.     Inzeo prevented Medley from executing the main duties of his job, including excluding him from meetings, e-mails, and discussions; excluding him from decisions; reversing Medley's decisions without notifying him; denying him funding; and preventing him from managing his own staff.  When Medley tried to discuss his treatment with Inzeo, Inzeo would raise his voice, become angry, call him egotistical, and said he would "not tolerate insolence" from Medley.  When Medley complained about the treatment he was experiencing from one of Inzeo's Caucasian subordinates, Inzeo said, "You better not be accusing Janet of being racist" or words similar.  Inzeo also excluded Medley from a workgroup that Medley was previously authorized to develop.

13.     On or about January 2, 2020, the EEOC appointed Martin Ebel, a Caucasian male, who was a direct report to Inzeo, to become acting chief operating officer.

14.     Between in or about January and in or about March 2020, Medley and his office proactively reached out to the Office of Information Technology to discuss work-from-home and training solutions in the face of the upcoming pandemic.  On or about March 12, 2020, during a senior staff telephonic meeting, Inzeo began yelling at Medley stating that Medley had no authority to contact the Office of Information Technology without Inzeo's approval.

15.     Minutes after the call, Kessela Reis, an African American subordinate, called Medley and said, "I'm mad at him [Inzeo] and he should not do this to you."  Medley said he would handle the situation, but Reis said she felt compelled to say something.  Reis sent an e-mail to the approximately 16 people who were at the meeting, admonishing them for permitting Inzeo's treatment of Medley.  After the e-mail was circulated, Medley called Inzeo who said, "I will not be talking to you without a witness."

16. In or around June 2020, Inzeo contacted Medley and accused Reis of improperly contacting vendors without authorization and providing an advantage to a vendor in the procurement process. Medley advised Inzeo that the allegations were unfounded. For a period of more than one week, during late work hours or after business hours, Inzeo required Medley to produce multiple records to support filing a complaint with the Inspector General against Reis. Medley provided the records requested by Inzeo but opposed Inzeo's actions, stating it was retaliation for Reis raising concerns of race discrimination. In response, Inzeo said, "The problem with you is that you do not control Kessela [Reis]." Medley asked for clarification but Inzeo did not respond. Reis was Medley's only direct report who is black. On previous occasions Inzeo chastised Medley when he attempted to manage white subordinates.

17. On or about June 22, 2020, Medley reported to Ebel that he thought Inzeo was retaliating against Reis -- and against Medley for opposing his retaliation. Medley reported to Ebel that "something needed to be done" about Inzeo's behavior and Medley said, "I plan to file a complaint." Ebel said, "Hold on, don't do anything." In or about August 2020, Ebel told Medley that Inzeo was planning to retire in September 2020. Ebel said, "Now you don't have to file that monster EEO complaint. You were planning on filing one, weren't you?"

18. Inzeo retired from the EEOC on September 30, 2020, and Ebel replaced Inzeo as Office of Field Programs director.

19. On or about October 30, 2020, Ebel rated Medley for his performance review for the period from October 1, 2019 through September 30, 2020. The ratings were on a scale of 1 through 5, with 1 being unsatisfactory and level 5 being outstanding. Inzeo rated Medley on five critical elements with the following ratings: leading change: 3; leading people 3; business acumen 4; building coalitions: 2; results driven: 4. The overall rating was a 3.

20. Ebel based his rating on a narrative drafted by Inzeo. Medley reported to Ebel that the narrative in his performance review left by Inzeo was false and stated that it should not be included in his rating, but Ebel included the narrative.

21. On or about November 23, 2020, the performance review board met and concurred with Medley's rating of level 3, fully successful.

22. On or about December 4, 2020, EEOC Chair Janet Dhillon changed Medley's rating for the element of "building coalitions" from a rating of 2 to a 1. Any SES with an element rating as level 1, receives an overall final rating of level 1, unsatisfactory. This was the first time in Medley's almost 10-year career at the EEOC that he received a rating of level 1 on any performance evaluation. Dhillon had never met with Medley to discuss his work.

23. On or about November 2, 2020, Medley reported to Ebel that Inzeo's narrative was racially motivated and not accurate. But Ebel would not change the rating.

24. On or about November 5, 2020, Ebel issued Medley a letter of reprimand for a project assigned to Medley for which he had been excluded from duties related to the project. In subsequent discussions regarding the letter of reprimand, Ebel noted his anger about Medley's demand that Ebel remove the discriminatory narrative from his rating. Medley asked Ebel to retract the letter of reprimand, reporting his concerns that these letters stemmed from Inzeo's discriminatory animus. Ebel would not detract the letters.

25. On or about December 14, 2020, Dhillon issued a notice of action to remove Medley from the Senior Executive Service, noting that it was a final decision. The letter included Inzeo's false and discriminatory narrative of Medley's performance.

26. The removal would be effective on January 17, 2021 and would reassign Medley to the position of New Orleans Field Office, Supervisory E.O. Investigator, GS-1860-15, within

the Houston District Office, OFP. The permanent duty station for this position is New Orleans, Louisiana.

27. Medley entered into a purchase and sales agreement to purchase a new home in Massachusetts in or about October 2020 and which closed in January 2021.  Medley and his wife are diabetic, making them at a higher risk for severe complications of Covid-19.  Medley's daughter is currently in the seventh grade and attending school in Massachusetts.

28. Medley requested a stay of his removal until February 19, 2021. The EEOC placed him on administrative leave but granted the request. Medley subsequently requested and was given a stay of his removal until March 1, 2021.

29. Upon information and belief, Dhillon did not propose the removal of any other SES nor did she propose the removal of any Caucasian SES employee.  Dhillon reassigned an SES named Michael Farrell, a Caucasian male, without removing him from the SES.

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000(e), *et seq.*
## Discrimination Based on Race

30. Medley incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

31. Medley is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

32. The EEOC is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

33. Medley is African American.

34. The EEOC unlawfully discriminated against Medley when it removed him from his current SES position and forced him to relocate to New Orleans in a lower-ranked position. The EEOC also treated Medley more harshly than non-African American employees.

35. The Agency's reasons for these adverse actions are pretext for unlawful

discrimination.

36. For the EEOC's unlawful discrimination against Medley, pursuant to Title VII, Medley is entitled to general and special damages, economic damages including front and back pay, reinstatement, promotion, compensatory damages, reasonable attorneys' fees to be paid by the EEOC, as well as his costs and any other legal and/or equitable relief that this Court deems appropriate.

**COUNT II**
**Title VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000(e),** *et seq.*
**Retaliation**

37. Medley incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

38. Medley engaged in protected activity when he repeatedly opposed Inzeo's discriminatory conduct against himself and other African American employees. Medley also engaged in protected activity when he reported his support for his subordinate who intended to file an EEO discrimination complaint on his behalf and reported that he would file an EEO complaint based on race discrimination.

39. The EEOC violated 42 U.S.C. § 2000e, *et seq.,* by retaliating against Medley for engaging in protected activity it removed him from his current SES position and forced him to relocate to New Orleans in a lower-ranked position. The EEOC also treated Medley more harshly than non-African American employees.

40. The Agency's reasons for these adverse actions are pretext for unlawful discrimination.

41. For the EEOC's unlawful retaliation against Medley, pursuant to Title VII, Medley is entitled to general and special damages, economic damages including front and back

pay, reinstatement, promotion, compensatory damages, reasonable attorneys' fees to be paid by the EEOC, as well as his costs and any other legal and/or equitable relief that this Court deems appropriate.

### COUNT III
### Title VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000(e), et seq.
### Hostile work environment of harassment based on race and prior EEO activity.

42. Medley incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

43. Medley is African American.

44. Medley engaged in protected activity when he repeatedly opposed Inzeo's discriminatory conduct against himself and other African American employees. Medley also engaged in protected activity when he reported his support for his subordinate who intended to file an EEO discrimination complaint on his behalf and reported that he would file an EEO complaint based on race discrimination.

45. The EEOC violated 42 U.S.C. § 2000e, *et seq.,* by subjecting Medley to a hostile work environment when it removed him from his current SES position and forced him to relocate to New Orleans in a lower-ranked position. The EEOC also treated Medley more harshly than non-African American employees.

46. For the EEOC's unlawful harassment against Medley, pursuant to Title VII, Medley is entitled to general and special damages, economic damages including front and back pay, reinstatement, promotion, compensatory damages, reasonable attorneys' fees to be paid by the EEOC, as well as his cots and any other legal and/or equitable relief that this Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Malcolm Medley respectfully requests that the Court enter judgment in his favor and award him the following relief:

a) Economic damages for lost compensation and damages to Medley's career including front pay and back pay;

b) Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damages;

c) Pre-judgment interest;

d) Liquidated damages;

e) Reasonable costs and experts' and attorneys' fees; and

f) Any other such relief that the Court may deem just and equitable.

*By Counsel*

_/s/ Anita M. Chambers_
R. Scott Oswald, D.C. Bar # 458859
Anita Mazumdar Chambers, D.C. Bar # 1046845
The Employment Law Group, P.C.
888 17th Street, 9th Floor
Washington, D.C. 20006
Phone: (202) 261-2806
Facsimile:(202) 261-2835
soswald@employmentlawgroup.com
achambers@employmentlawgroup.com
*Counsel for Plaintiff*