**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MALCOLM MEDLEY,** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| **v.** ) | **Civil Action No.  _____** |
| ) | |
| **CHARLOTTE A. BURROWS, CHAIR** ) | |
| **UNITED STATES EQUAL** ) | |
| **EMPLOYMENT OPPORTUNITY** ) | |
| **COMMISSION,** ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HIS MOTION FOR TEMPORARY RESTRAINING ORDER AND
<u>PRELIMINARY INJUNCTION</u>**

Plaintiff Malcom Medley respectfully moves for a twenty-day temporary restraining order and preliminary injunction against Defendant Charlotte A. Burrows, Chair of the Equal Opportunity Employment Commission ("EEOC" or "Defendant"), enjoining the EEOC from removing Medley from his SES position and transferring him to a position hundreds of miles away from his family during a global pandemic.

## <u>INTRODUCTION</u>

Medley is a victim of the systemic failure in leadership at the highest levels of the EEOC, which unlawfully allowed for discrimination, a hostile work environment, and retaliation against him on the basis of race – the exact wrongdoing the agency was founded to prevent. Because of the irreparable harm Medley will suffer, because his claims have merit, and because the EEOC should not be allowed to flout the laws it is tasked with enforcing, the Court should enjoin EEOC from removing Medley from the Senior Executive Service and transferring him to New Orleans during a global pandemic until the conclusion of this litigation.

1

## FACTUAL BACKGROUND[1]

Medley is an African American male.  Medley previously practiced employment law and corporate law and served as the chair of the Massachusetts Commission Against Discrimination.

In April 2011, the EEOC hired Medley as a director of the Miami district office, a Senior Executive Service ("SES") position.  Nicholas Inzeo, director of the Office of Field Programs, served as Medley's direct supervisor.  Medley oversaw most of Florida, Virgin Islands and Puerto Rico; these were under performing districts, which Medley helped improve.

From in or about September 2011 through in or about September 2015, the EEOC consistently issued Medley "Outstanding" or "Exceeded Expectations" performance ratings.

In or about April 2015, the EEOC appointed Medley to the position of Director, Field Coordination Programs, ES-0340-00, in the Office of Field Programs.  This position was in Washington, D.C. where he reported to, and worked in-person with, Inzeo.  While there was a one special assignment African American female who retained her SES designation from a previous assignment, Medley was the only African American SES senior level program executive in the Washington, D.C. Office of Field Programs.

Inzeo prevented Medley from executing the main duties of his job, including excluding him from meetings, e-mails, and discussions; excluding him from decisions; reversing Medley's decisions without notifying him; denying him funding; and preventing him from managing his own staff.  When Medley tried to discuss his treatment with Inzeo, Inzeo would raise his voice, become angry, call him egotistical, and said he would "not tolerate insolence" from Medley. When Medley complained about the treatment he was experiencing from one of Inzeo's

---

[1]      Medley respectfully refers this Court to his complaint at Dkt. No. 1 for additional factual details. All uncited facts refer back to Medley's Complaint.

Caucasian subordinates, Inzeo said, "You better not be accusing Janet of being racist" or words similar.

On or about January 2, 2020, the EEOC appointed Martin Ebel, a Caucasian male, who was a direct report to Inzeo, to become acting chief operating officer.

Between in or about January and in or about March 2020, Medley and his office proactively reached out to the Office of Information Technology to discuss work-from-home and training solutions in the face of the upcoming pandemic.  On or about March 12, 2020, during a senior staff telephonic meeting, Inzeo began yelling at Medley stating that Medley had no authority to contact the Office of Information Technology without Inzeo's approval.

Minutes after the call, Kessela Reis, an African American subordinate, called Medley and said, "I'm mad at him [Inzeo] and he should not do this to you."  Medley said he would handle the situation, but Reis said she felt compelled to say something.  Reis sent an e-mail to the approximately 16 people who were at the meeting, admonishing them for permitting Inzeo's treatment of Medley.  After the e-mail was circulated, Medley called Inzeo who said, "I will not be talking to you without a witness."

In or around June 2020, Inzeo contacted Medley and accused Reis of improperly contacting vendors without authorization and providing an advantage to a vendor in the procurement process.  Medley advised Inzeo that the allegations were unfounded.  For a period of more than one week, during late work hours or after business hours, Inzeo would ask Medley for dozens of records to support filing a complaint with the Inspector General against Reis. Medley provided the records requested by Inzeo but opposed Inzeo's actions, stating it was retaliation for Reis raising concerns of race discrimination. In response, Inzeo said, "The problem with you is that you do not control Kessela [Reis]." Medley asked for clarification but

Inzeo did not respond. Reis was Medley's only direct report who is black. On previous occasions Inzeo chastised Medley when he attempted to manage white subordinates.

On or about June 22, 2020, Medley reported to Ebel that he thought Inzeo was retaliating against Reis -- and against Medley for opposing his retaliation.  Medley reported to Ebel that "something needed to be done" about Inzeo's behavior and Medley said, "I plan to file a complaint." Ebel said, "Hold on, don't do anything."  In or about August 2020, Ebel told Medley that Inzeo was planning to retire in September 2020.  Ebel said, "Now you don't have to file that monster EEO complaint.  You were planning on filing one, weren't you?"

Inzeo retired from the EEOC on September 30, 2020, and Ebel replaced Inzeo as Office of Field Programs director.

On or about October 30, 2020, Ebel rated Medley for his performance review for the period from October 1, 2019 through September 30, 2020.  The ratings were on a scale of 1 through 5, with 1 being unsatisfactory and level 5 being outstanding. Inzeo rated Medley on five critical elements with the following ratings: leading change: 3; leading people 3; business acumen 4; building coalitions: 2; results driven: 4.  The overall rating was a 3.

Ebel based his rating on a narrative drafted by Inzeo.  Medley reported to Ebel that the narrative in his performance review left by Inzeo was false and stated that it should not be included in his rating, but Ebel included the narrative.

On or about November 23, 2020, the performance review board met and concurred with Medley's rating of level 3, fully successful.

On or about December 4, 2020, EEOC Chair Janet Dhillon changed Medley's rating for the element of "building coalitions" from a rating of 2 to a 1. Any SES with an element rating as level 1, receives an overall final rating of level 1, unsatisfactory.  This was the first time in

4

Medley's almost 10-year career at the EEOC that he received a rating of level 1 on any performance evaluation.  Dhillon had never met with Medley to discuss his work.

On or about November 5, 2020, Ebel issued Medley a letter of reprimand for a project assigned to Medley for which he had been excluded from duties related to the project. In subsequent discussions regarding the letter of reprimand, Ebel noted his anger about Medley's demand that Ebel remove the discriminatory narrative from his rating.  Medley asked Ebel to retract the letter of reprimand, reporting his concerns that these letters stemmed from Inzeo's discriminatory animus.  Ebel would not detract the letters.

On or about December 14, 2020, Dhillon issued a notice of action to remove Medley from the Senior Executive Service, noting that it was a final decision.  The letter included Inzeo's false and discriminatory narrative of Medley's performance.

The removal would be effective on January 17, 2021 and would reassign Medley to the position of New Orleans Field Office, Supervisory E.O. Investigator, GS-1860-15, within the Houston District Office, OFP. The permanent duty station for this position is New Orleans, Louisiana.

Medley entered into a purchase and sales agreement to purchase a new home in Massachusetts in or about October 2020 and which closed in January 2021.  Medley and his wife are diabetic, making them at a higher risk for severe complications of Covid-19.  Medley's daughter is currently in the seventh grade and attending school in Massachusetts.

Medley requested a stay of his removal until February 19, 2021. The EEOC placed him on administrative leave but granted the request. The EEOC has since further stayed its adverse actions to March 1, 2021.

Upon information and belief, Dhillon did not propose the removal of any other SES nor did she propose the removal of any Caucasian SES employee.  Dhillon reassigned an SES named Michael Farrell, a Caucasian male, without removing him from the SES.

In short, Medley's long and successful career fighting against employment discrimination is left in tatters because of the color of his skin. EEOC is depriving Medley of his SES status and his duty station near his home and family.

## LEGAL STANDARD

When deciding whether to grant a preliminary injunction, the Court examines whether (1) there is a substantial likelihood the plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially injure the defendants; and (4) the public interest will be furthered by the injunction. *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1157 (D.C. Cir. 2007) (upholding preliminary injunction issued by this Court). The court balances these factors, and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Id*. (quoting *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998)).

While it is appropriate for the Court to consider all four factors in making a determination, the Court first balances the likelihood that the plaintiff will suffer irreparable harm without injunctive relief against the likelihood that the defendant will suffer harm if an injunction is issued. *See Ancora Capital & Mgmt. Grp., LLC. v. Gray*, 55 F. App'x 111, 113 (4th Cir. 2003); *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977). If, in balancing these two prongs, the balance of hardships "tips decidedly in favor of the plaintiff," it will typically "be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation

and thus for more deliberate investigation." *Blackwelder Furniture,* 550 F.2d at 195. *See also, O'Brien v. Appomattox County, Va.,* 71 Fed. Appx. 176, 178 (4th Cir. 2003); *Ancora Capital*, 55 Fed. App. at 113; *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 858–59 (4th Cir. 2001); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

## ARGUMENT

This Court should grant Medley's motion for a preliminary injunction because: (1) the Agency's decision to demote and transfer Medley will cause irreparable harm; (2) Medley has a particularly strong likelihood of success on the merits of his claims; (3) the balance of equities tips decidedly in Medley's favor; and (4) the public interest weighs in favor of granting Medley relief.

**I.     The Agency's decision to demote and transfer Medley will cause irreparable harm.**

The test for injunctive relief in the federal courts has always been based on irreparable harm and the inadequacy of legal remedies. *See Monument Realty LLC v. Washington Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 74 (D.D.C. 2008) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985)).  In *Wisconsin Gas*, the court of appeals identified the factors a court should consider in determining whether a party has demonstrated irreparable harm and the inadequacy of legal remedies.  *Id*.  First, the injury must be both certain and great, actual, and not theoretical.  *Wis. Gas Co.*, 758 F.2d at 674; *see also Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C.1976), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976) (citations and internal quotations omitted) (the party seeking injunctive relief must show that "[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.").  Second, the harm must be irreparable, in that the harm cannot be remedied solely with monetary damages. *Wis. Gas Co.*, 758 F.2d at 674.

### A.  Defendant's decision is certain.

Medley meets the first standard set forth in *Wisconsin Gas* as the Agency has already

provided notice to Medley that it will remove Medley from his SES status and has transfer him

to New Orleans on March 1, 2021.  Thus, the injury is very certain to occur and is not theoretical

– but rather is a clear and present harm that has and will take place unless this Court enjoins the

Defendant.

### B.  Defendant's decision will cause irreparable harm that cannot be remedied solely with monetary damages.

The EEOC's actions that this motion asks the Court to prevent are the latest in a string of

harmful and retaliatory acts that started when Medley was hired to work at the EEOC

headquarters in 2015.  Retaliation is an irreparable harm, both to Medley and to any future

employee seeking to report discrimination or engage in any other protected activity. *See EEOC v.*

*Cosmair, Inc.*, 821 F.2d 1085, 1090-91 (5th Cir. 1987) ("When an injunction is expressly

authorized by statute and the statutory conditions are satisfied, the movant need not establish

specific irreparable injury to obtain a preliminary injunction. . . . **when a civil rights statute is**

**violated, irreparable injury should be presumed from the very fact that the statute has**

**been violated**.") (internal quotations and citations removed, emphasis added); *see also Bonds v.*

*Heyman,* 950 F. Supp. 1202, 1214-15 (D.D.C. 1997) (granting a federal employee's preliminary

injunction motion where the employee had complained of retaliation); *see also Neal v.*

*Department of Corrections,* 1996 U.S. Dist. Lexis 7967, at *10 (D.D.C. 1996); *see also Segar v.*

*Civiletti,* 516 F. Supp. 314, 320 (D.D.C. 1981) (granting plaintiff's motion for a preliminary

injunction and finding that the plaintiff had engaged in protected activity in the form of a class

action discrimination suit against the employer, that the employee was subjected to adverse

action in the form of a transfer to another work assignment, and that irreparable harm would

8

attach to members of a class of African American DEA agents if the court did not issue the injunction).  Thus, the irreparable harm stems not from the removal from the SES or the required transfer to New Orleans, but rather from the violation of civil rights that are irreplaceable, beyond the ability of courts to redress through monetary or injunctive relief. Douglas Laylock, *The Death of the Irreparable Injury Rule*, 103 HARV. L. REV 687, 703-09 (1990). This is why equitable relief is a standard remedy in civil rights cases. *Id.* at 707.

In addition to the violation of civil rights laws which is sufficient for irreputable harm, the Agency's decision to remove Medley's from the SES and to transfer him to New Orleans will significantly harm his future career trajectory and planned retirement, harm his reputation, and harm his health.  Medley will, unless the Court orders otherwise, leave the SES with two letters of reprimand and a level 1 rating for FY2020.  Further, Medley's professional reputation is tarred by Inzeo's false characterizations of Medley's performance and the allegations in the EEOC's memo citing its reasons to remove Medley.

The harm to Medley's reputation that he will face will not be repaired by monetary damages, but rather by preventing that damage from occurring in the first place. In addition to Medley's career and reputation, Medley's retirement is also at risk. Medley's retirement with the SES would have vested in April 2021, but now Medley's career trajectory and retirement have been completely altered.  These harms are irreparable because no court could measure the adequacy of any legal relief meant to undo such suffering. *E.g., Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551 (4th Cir. 1994).

Additionally, Medley and his spouse are diabetic, conditions known to be conditions that intensify the risk of complications from COVID-19. In the middle of a pandemic, EEOC is transferring Medley to New Orleans, which is considered a very high-risk area based on reliable

infection rate statistics, despite the fact Medley had been successful working from home from Boston for years.[2]

Since the EEOC's violation of civil rights laws coupled with its imminent damage to Medley's career, retirement, reputation, and health in a manner that could not be remedied solely with monetary damages (*see* Section II-C), Medley is able to show that he will suffer irreparable harm.

**II.    Medley has a particularly strong likelihood of success on the merits of his claims.**

Medley has a strong likelihood of success on the merits on his claims. In showing a strong likelihood of success, Medley need not prove his case in full*, i.e.,* by a preponderance of the evidence. *See University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). Medley can establish that EEOC subjected Medley to a hostile work environment, discrimination, and retaliation, all on the basis of race.

**A.    Medley can demonstrate that the Agency subjected Medley to a hostile work environment.**

"In order to show a hostile work environment, a plaintiff must present evidence that his workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ali v. McCarthy*, 179 F. Supp. 3d 54, 64 (D.D.C. 2016) (internal quotations and citations omitted). When determining whether a hostile work environment exists, courts view the "totality of the circumstances," including "the frequency of the discriminatory

---

[2] Even with the EEOC's temporary general work from home order, Medley is placed at risk whenever he might need to travel to New Orleans. The move from Boston/Washington DC to New Orleans places Medley at risk regardless of EEOC's pandemic-related policies, as Medley will be unable to oppose any change in EEOC's policies in the future. Further, *any* travel to New Orleans is a risk compared to Medley working in Massachusetts (as he has been working from home and not traveling).

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Medley can meet this standard.

Medley, one of the only senior level African American employees at the Washington, D.C. office, was repeatedly excluded from doing his job at the direction of Inzeo. These actions were done frequently and prevented Medley on a daily basis from doing his job as he could not attend certain meetings, complete projects, and review critical e-mails.  Medley was, from the start, *never* able to do his work as described by his position description. Instead, Inzeo controlled who was given what task, and very few ever went to Medley.  Further, any attempt by Medley to reassert authority over his responsibilities were rebuffed by Inzeo in the form of berating, yelling, and accusations of "insolence." Inzeo even accused Medley of making accusations of racism when he simply was raising concerns about how he was treated by a Caucasian subordinate employee.

On March 12, 2020, Inzeo berated Medley on a call with over 16 people.  Inzeo's actions were so shocking that an African American subordinate denounced Inzeo's actions and indicated that she would escalate her concerns with the EEO.  This was not a mere offensive utterance – but a severely humiliating incident that caused a subordinate to act.  Additionally, once Medley reported to his supervisors that he would be filing an EEO complaint, his new supervisor Ebel told him he did not need to file one anymore.  Finally, Ebel and Inzeo issued Medley a satisfactory performance review, which was approved by the performance evaluation board, only to have Dhillon downgrade Medley, strip him of his SES position, and transfer him to another location.  None of Medley's Caucasian coworkers were ever treated this way by the Agency.

Thus, Medley can show that the Agency subjected him to a hostile work environment based on his race and prior EEO activity.

### B.  Medley can demonstrate a *prima facie* case of race discrimination.

To establish a *prima facie* case of discrimination on the basis of race, Medley must show that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action concerning a term, condition, or privilege of employment; and (3) there is an evidentiary link between membership in the protected class and the adverse employment action that gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C.Cir.2002).

Medley is African American, and the EEOC subjected him to an adverse action when it removed from the SES and transferred him to another location.  Sufficient evidence exists to show an inference of discrimination. First, Inzeo told Medley not to accuse one of his reports of racism, something Medley did not even attempt to do. Second, Inzeo subjected Medley to a hostile work environment but did not do so for any Caucasian members of the OFP office. Third, EEOC removed Medley and another African American SES from a working group that Medley himself had started. Fourth, other witnesses, including Reis and Ebel, recognized the severity of the disparate treatment that was taking place. Reis sent out an email after Inzeo berated Medley in front of her, explicitly stating that the behavior was a sign of disparate treatment. Ebel recognized that Medley and Reis, were they to file a complaint, would be successful, calling it a "monster" of a complaint. Finally, Medley was one of the only African American SES-level employees at OFP and was the only one who was so abruptly removed from the SES and reassigned.  All of these factors, taken together, are more than enough to show an inference of discrimination.

### C.  Medley can demonstrate a *prima facie* case of retaliation.

To establish a *prima facie* case for retaliation under Title VII, Medley must demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse treatment by Defendant; and (3) a nexus exists between the protected activity and the adverse action. *See Taylor v. Washington Metro. Area Transit Auth.*, 109 F. Supp. 2d 11, 17 (D.D.C. 2000). Such a nexus may be established by evidence that the adverse action followed the protected activity within such a period of time and in such a manner that a reprisal motive is inferred. *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C.Cir.2003) ("[T]his circuit has held that a close temporal relationship may alone establish the required causal connection."). Medley can also establish the third *prima facie* element by showing that Defendant retaliated against Medley at the first opportunity to do so, regardless of how much time has passed since the most recent protected activity. *See Kalinoski v. Gutierrez*, 435 F.Supp.2d 55, 69–70 (D.D.C.2006).

Medley engaged in protected activity when he: (1) reported to Inzeo that he was retaliating against Reis by threatening to report her to OIG in summer 2020; and (2) reporting to Ebel that he was going to file a race discrimination complaint against the Agency.

The adverse action prong is also easily satisfied.  Inzeo retired but left behind a performance narrative filled with falsehoods about Medley in summer 2020, while Ebel allowed the performance narrative to stand.  Dhillon downgraded Medley's performance rating, issued two letters of reprimand against Medley, and then removed Medley from the SES and transferred his position to another location.

The timeline of retaliation is stark. Prior to Medley's legally protected activity, the EEOC issued him satisfactory performance reviews from 2015 through 2019. However, after Medley refused to participate in retaliating against Reis on Inzeo's behalf, Inzeo gave Medley a worse

than usual performance review, as well as an inaccurate narrative at the first opportunity he had. Further, Ebel retaliated against Medley by allowing Inzeo's comments to stand and orchestrating Medley's level 1 rating very soon after Medley refused to guarantee that he would not file a complaint against EEOC for Inzeo's behavior, arguably also at the first opportunity he had. Ebel further retaliated against Medley soon after Medley opposed his level 1 rating by issuing him letters of reprimand and ultimately by removing him from the SES and transferring his position to New Orleans.

Inzeo's actions were retaliatory because he harmed Medley at the first available opportunity to do so. Ebel's retaliatory actions happened within a very close temporal proximity to Medley's protected activity and arguably at the first opportunity as well, sufficient inference of retaliation.

In addition, Medley was also a victim of retaliation by association, with Inzeo seeing Medley as associated with Reis' protected activity, the email she sent accusing Inzeo of disparate treatment against Medley. The EEOC itself has argued such retaliation is a part of Title VII, and it applies here, with Inzeo's adverse actions coming at the first opportunity after Reis defended Medley. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 179 (2011) ("Today's decision accords with the longstanding views of the Equal Employment Opportunity Commission (EEOC), the federal agency that administers Title VII. In its Compliance Manual, the EEOC counsels that Title VII prohibit[s] retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights.") (Ginsburg J., concurring) (internal quotations removed).

Further, Inzeo and Ebel's behavior both constitute anticipatory retaliation, as both suspected that Medley would imminently file an EEO complaint and adversely acted against him

14

as described above before Medley even had the chance to file the complaint. *See Lester v. O'Rourke*, 2018 WL 3141796 (N.D. Ill. June 27, 2018) (forcing employee to sign agreement that would voluntarily waive right to seek relief with the EEOC in anticipation of EEO complaint is anticipatory retaliation), *citing Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (retaliation defined as any behavior that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").

Finally, even if EEOC argues that Dhillon's actions cannot be imputed directly to Ebel or Inzeo, this would still be a clear case of "cat's paw" retaliation. Even if Dhillon did initiate the removal of the SES position and the transfer, this by no means suggests that EEOC is not liable for her decision.  In *Staub v. Proctor Hospital*, the Supreme Court appropriately established that the non-decision maker did not need to exercise a "singular influence" for the decision maker's decision to be a product of "blind reliance" for cat's paw doctrine to apply.  *See* 562 U.S. 411, 416 (2011). In *Hill v. Lockheed Martin Logistics Management, Inc.*, the Fourth Circuit stated perhaps the best approximation of a cat's paw case:

> After having been presented evidence that the plaintiff's supervisor was motivated by age discrimination, the court was confronted with the problem that the plaintiff was technically fired by a "Career Path Committee" which was unaware of the supervisor's prejudice. The court held that if the committee "acted as the conduit of [the supervisor's] prejudice-his cat's paw-the innocence of its members would not spare the company from liability."

354 F.3d 277, 288 (4th Cir. 2004) (citing *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990) (abrogated on other grounds)).  Here, Dhillon's decisions would be based on feedback received from Inzeo and Ebel, both of whom were aware of Medley's protected activities. Medley can therefore show a *prima facie* case of retaliation.

**D. Medley can demonstrate that the Agency's purported non-discriminatory, non-retaliatory reasons for its actions against Medley are in fact discriminatory and retaliatory.**

Because Medley has established a conclusive *prima facie* case of discrimination, retaliation, and harassment, to overcome a motion for preliminary injunction, the EEOC bears the burden of showing that it will likely succeed in asserting its defenses. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). A successful defense must articulate a legitimate, nondiscriminatory reason for its actions. *E.g., Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Assuming Defendant can meet this burden, Medley has a high chance of being able to successfully prove any legitimate reasons Defendant's articulates as pretextual. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Burdine,* 450 U.S. at 253.  Proffering a legitimate business reason, alone, is not sufficient to disprove discrimination, as Medley may show pretext.

For example, deviations from standard procedures without explanation or justification are sufficient to support an inference of pretext. *See Andre v. Dep't of Defense*, EEOC Appeal No. 01994562 (February 22, 2002). Medley's inability to do his job for nearly five years due to Inzeo's actions is a clear deviation from the EEOC's standard procedures.

Furthermore, inconsistent, contradictory, or shifting explanations for EEOC's actions also serve as support for a Medley's claim of pretext. *See e.g., Hagerty v. Dep't of the Navy*, EEOC Appeal No. 0720060084 at *4 (November 13, 2006). Ebel's statements suggesting that he knew that Inzeo's actions were discriminatory and worthy of a "monster" of an EEO complaint do not square with Ebel telling Medley not to file it and do not square with Ebel allowing Inzeo's performance narrative to influence Medley's performance rating. It would have been more

logical and consistent with the EEOC's founding values, as well as its procedures, to allow the complaint to go forward and to modify Medley's performance review.[3]

Another example is a showing that similarly situated employees were treated better based on race. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). Medley can demonstrate that he, Reis, and any other African American reports, were the only reports under Inzeo that were treated in a hostile manner, with all of Inzeo's Caucasian reports being treated favorably.

The last and most common manner of proving pretext is to prove that the EEOC's reasons for adversely acting against Medley are intentionally false. *See Brady*, 520 F.3d at 495. Inzeo's narrative for Medley's alleged bad performance involves references to Medley not attending or being late for meetings or failing to follow up on his tasks. This is only because Inzeo himself had made sure that Medley could not accomplish his work. This theme continued with Ebel and Dhillon's communications against Medley in the letters of reprimand and the SES removal memorandum. None of these memoranda, letters, or communications can explain why Medley, someone who has performed well as an SES since April 2011, suddenly has an extensive negative performance and disciplinary record in his ninth year of employment at EEOC, only beginning after he engaged in legally protected activity.

As such, the EEOC offers no legitimate or non-discriminatory reasons for its actions, merely recording an unlikely, sudden, and precipitous drop in Medley's performance and disciplinary record, leaving any rational observer to conclude that its actions are based entirely on discrimination, harassment, and retaliation. Medley has thus shown that he can show that the EEOC's explanations for its imminent actions against Medley are mere pretext for race

---

[3] This is arguably also a deviation from policy and procedure.

discrimination. Further, Medley has shown that he likely to prevail on his claims, warranting

stopping the EEOC from irreparably harming Medley.

**III.     The balance of equities tips decidedly in the favor of Medley.**

For the reasons explained above, Medley will likely prevail on his claims and Defendant

will likely be found to have engaged in unlawful conduct.  Further, Medley will suffer

irreparable harm if the Court refuses his preliminary relief, while the Agency will suffer little

harm, if any at all, if Medley remains as an SES at EEOC headquarters for the duration of this

litigation.

As discussed above, Medley has demonstrated that he will likely prevail on the merits of

his claims. This means that if the Court grants Medley a preliminary injunction, only a low

probability exists that the Court will have wrongly granted Medley relief.  Inversely, if the Court

refuses Medley a preliminary injunction, a high probability exists that the Court will have

wrongly denied Medley protection from the irreparable harms identified above.

Further, if the Court denies Medley preliminary relief, he will be irreparably harmed as

discussed above. In contrast, the EEOC will suffer little to no harm if the Court enjoins its

removal of Medley from the SES and his current position. In fact, Defendant will likely benefit

from maintaining the *status quo* given the difficult task of finding another employee with the

extensive experience Medley possesses.

In summary, granting Medley preliminary relief will create only a low probability that

Defendant will wrongly bear an insignificant harm. In contrast, refusing Medley a preliminary

injunction will create a high probability that Medley will wrongly suffer serious, irreparable

harm. Therefore, the balance of equities tips decidedly in Medley's favor.

**IV.     Granting the temporary restraining order serves the public interest.**

Granting Medley preliminary relief serves the public interest. Congress has expressed its judgment to this effect in two contexts: its desire to make victims whole and its explicit endorsement in the Civil Rights Act of preliminary relief.

First, Congress expressed that it is in the public interest to ensure victims of unlawful discrimination and retaliation are made whole.  *See e.g.*, *West v. Gibson*, 527 U.S. 212, 219 (1999) (discussing the aim of additional remedies provided in the 1991 amendments to the Civil Rights Act.)  Preliminary injunctions to maintain the *status quo* are part and parcel of complete relief. *Aronberg v. Walters*, 755 F.2d 1114, 1115-16 (4th Cir. 1985).  In *Aronberg*, the plaintiff, a physician, sought preliminary injunctive relief to maintain the *status quo* while her discrimination claim under the Act was pending. *Id.* In reversing the trial court, the Court reasoned that renouncing its ability to grant preliminary relief would:

> …have a chilling effect on the complainant's fellow employees who might otherwise desire to assert their equal rights, or to protest the employer's discriminatory acts, or to cooperate with the investigation of a discrimination charge.  And in many cases, the effect on the complainant of several months without work or work in humiliating or otherwise intolerable circumstances will constitute harm that cannot adequately be remedied by a later award of damages.

*Id.* Second, Congress has expressed its views that when similar circumstances are present that a preliminary injunction serves the public interest. The Act explicitly authorizes the EEOC to seek preliminary injunctions when a preliminary investigation indicates that a substantial likelihood of finding retaliation exists and if the charging party and/or the EEOC will likely suffer irreparable harm because of the retaliation. 42 U.S.C. §2000e-5(f)(2). This applies even when the EEOC is the Defendant. Thus, Congress has expressed its judgment that in situations such as those demonstrated here, preliminary relief is appropriate. Because Congress's

expression of the public interest in two contexts support granting preliminary injunction here, the public interest will be served by such an injunction.

## **CONCLUSION**

For the foregoing reasons, the Agency should be restrained from altering the *status quo* and inflicting further adverse actions until the resolution of Medley's claims.  The Court should grant Medley a temporary restraining order and preliminary injunction to restrain the Agency from removing Medley from the SES and transferring him to New Orleans until the adjudication of his claims is completed.


Dated: March 1, 2021                                  Respectfully Submitted,


                                                              */s/ Anita M. Chambers*
                                                              R. Scott Oswald
                                                              Anita M. Chambers
                                                              The Employment Law Group, P.C.
                                                              888 17th Street, 9th Floor
                                                              Washington, D.C. 20006
                                                              Phone: (202) 261-2806
                                                              Facsimile:(202) 261-2835
                                                              soswald@employmentlawgroup.com
                                                              achambers@employmentlawgroup.com
                                                              *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2021, a true and correct copy of the foregoing was

served via served via email upon:

> Charlotte A. Burrows, Chair,
> Equal Opportunity Employment Commission,
> charlotte.burrows@eeoc.gov

> Carol Miaskoff, Legal Counsel,
> Office of Legal Counsel,
> Equal Opportunity Employment Commission,
> carol.miaskoff@eeoc.gov

> Daniel Van Horn
> Chief of Civil Division
> United States Attorney's Office for the District of Columbia
> 555 4th Street NW,
> Washington, D.C. 20530
> Daniel.VanHorn@usdoj.gov

and via certified mail on:

> UNITED STATES ATTORNEY'S OFFICE
> FOR THE DISTRICT OF COLUMBIA
> Attn: Civil Process Clerk
> 555 4th Street NW,
> Washington, D.C. 20530

> UNITED STATES ATTORNEY GENERAL
> 950 Pennsylvania Avenue NW
> Washington, DC 20530

> EEOC HEADQUARTERS
> 131 M Street, NE
> Washington, DC 20507

*/s/ Anita M. Chambers*
Anita M. Chambers
