UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MALCOLM MEDLEY,<br><br>        *Plaintiff,*<br><br>    v.<br><br>CHARLOTTE A. BURROWS, in her official<br>capacity as Chair, U.S. Equal Employment<br>Opportunity Commission,<br><br>        *Defendant.* | Civil Action No. 21-0534 (RC) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
<u>PRELIMINARY INJUNCTION</u>**

CHANNING D. PHILLIPS
D.C. Bar #415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

DIANA V. VALDIVIA
D.C. Bar # 1006628
Assistant United States Attorney

United States Attorney's Office
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: (202) 252-2545
diana.valdivia@usdoj.gov

Dated: March 10, 2021                              *Counsel for Defendant*

## **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………...1

FACTUAL BACKGROUND…………………………………………………………..3

LEGAL STANDARD…………………………………………………………………..7

ARGUMENT…………………………………………………………………………...8

      I.     Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits of His Claims Because He Failed to Exhaust Administrative Remedies and Omitted Critical, Unfavorable Information from His Complaint…………………………..8

      II.    Plaintiff Cannot Show Irreparable Harm.………………………………………..14

      III.   Granting Plaintiff Injunctive Relief Would Harm Defendant and Serve No Public Interest…………………………………………………………………20

CONCLUSION………………………………………………………………………..21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashland Oil, Inc. v. FTC*,
   409 F. Supp. 297 (D.D.C. 1976) ............................................................................................ 16

*Aviles-Wynkoop v. Neal*,
   978 F. Supp. 2d 15 (D.D.C. 2013) ......................................................................................... 11

*Bonds v. Heyman*,
   950 F. Supp. 1202 (D.D.C. 1997) ................................................................................... 15, 16

*Brodie v. U.S. Dep't of Health & Human Servs.*,
   715 F. Supp. 2d 74 (D.D.C. 2010) ......................................................................................... 17

*Brown v. District of Columbia*,
   888 F. Supp. 2d 28 (D.D.C. 2012) ......................................................................................... 17

*Capitol Hill Baptist Church v. Bowser*,
   Civ. A. No. 20-02710 (TNM), 2020 WL 5995126 (D.D.C. Oct. 9, 2020) .............................. 12

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ................................................................................... 7, 15, 18

*Clarke v. Office of Federal Housing Enter. Oversight*,
   355 F. Supp. 2d 56 (D.D.C. 2004) ................................................................................... 15, 16

*Columbia Hosp. for Women Found. v. Bank of Tokyo–Mitsubishi, Ltd.*,
   15 F. Supp. 2d 1 (D.D.C. 1997) .............................................................................................. 7

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
   772 F.2d 972 (D.C. Cir. 1985) ................................................................................................ 7

*Dallas Safari Club v. Bernhardt*,
   453 F. Supp. 3d 391 (D.D.C. 2020) ....................................................................................... 12

*Davis v. Billington*,
   51 F. Supp. 3d, 2014 WL 2882679 ........................................................................................ 19

*Davis v. Pension Ben. Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) .............................................................................................. 8

*EEOC v. Cosmair, Inc.*,
   821 F.2d 1085 (5th Cir. 1987) .............................................................................................. 16

*Farris v. Rice*,
   453 F. Supp. 2d 76 (D.D.C. 2006) ................................................................................... 14, 18

*Howard v. Evans*,
   193 F. Supp. 2d 221 (D.D.C. 2002) ........................................................................................ 9

*Howard v. Gutierrez*,
   Civ. A. No. 08-0421 (PLF), 2008 WL 11492926, at *2 (D.D.C. Apr. 16, 2008) ..................... 9

*Jordan v. Evans*,
   355 F. Supp. 2d 72 (D.D.C. 2004) ......................................................................................... 16

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ............................................................................................... 7, 8

*Nat'l Conf. on Ministry to Armed Forces v. James*,
  278 F. Supp. 2d 37 (D.D.C. 2003) ................................................................ 7
*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) .................................................................................. 15
*Neal v. Department of Corrections*,
  1996 U.S. Dist. Lexis 7967 (D.D.C. 1996) .................................................. 16
*Nichols v. Agency for Int'l Dev.*,
  18 F. Supp. 2d 1 (D.D.C. 1998) ............................................................ 17, 20
*Park v. Howard Univ.*,
  71 F.3d 904, 907-09 (D.C. Cir. 1995) ........................................................ 10
*Pursuing Am.'s Greatness v. FEC*,
  831 F.3d 500 (D.C. Cir. 2016) .................................................................... 7
*Sampson v. Murray*,
  415 U.S. 61 (1974) ...................................................................... 14, 15, 18, 20
*Sataki v. Broad. Bd. of Governors*,
  733 F. Supp. 2d 22 (D.D.C. 2010) ................................................ 11, 12, 14, 16
*Segar v. Civiletti*,
  516 F. Supp. 314 (D.D.C. 1981) ................................................................ 16
*Singh v. McConville*,
  187 F. Supp. 3d 152 (D.D.C. 2016) ............................................................ 8
*Taylor v. Resolution Trust Corp.*,
  56 F.3d 1497 (D.C. Cir. 1995) ............................................................ 16, 17
*Veitch v. Danzig*,
  135 F. Supp. 2d 32 (D.D.C. 2001) .............................................................. 18
*Wagner v. Taylor*,
  836 F.2d 566 (D.C. Cir. 1987) ............................................................ 11, 14
*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................ 7, 8
*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ............................................................ 15, 16, 18

**Statutes**

42 U.S.C. §2000e ............................................................................................ 9
42 U.S.C. §2000e–16(c) .................................................................................. 9
42 U.S.C. § 2000e-16(b) .................................................................................. 9

**Regulations**

29 C.F.R. §1614.407 ...................................................................................... 9
29 C.F.R. §§1614.105-106 .............................................................................. 9
29 C.F.R. §§1614.108 ...................................................................................... 9

## INTRODUCTION

Defendant, Charlotte Burrows, in her official capacity as Chair, U.S. Equal Employment Opportunity Commission ("EEOC" or "Agency"), by and through her undersigned counsel, respectfully submits this memorandum of points and authorities in opposition to Plaintiff Malcolm Medley's motion for a temporary restraining order and preliminary injunction (ECF No. 2 "Plaintiff's Motion").  For the reasons stated herein, Plaintiff's Motion should be denied for several independently sufficient reasons.

Plaintiff seeks a preliminary injunction to "enjoin EEOC from removing [Plaintiff] from the [Senior Executive Service ("SES")] and transferring him to New Orleans during a global pandemic until the conclusion of this litigation."  Pl's Mot. at 1.  Plaintiff also seeks to compel the Commission to cease its regular administrative processing of the "Notice of Action" removing Plaintiff from the SES, issued to him on December 14, 2020, and effective on March 1, 2021.  *See* Ex. 1 ("Notice of Action").  Plaintiff's Motion is without merit and it should be denied.[1]

*First*, Plaintiff has not shown a likelihood of success on the merits of his claims.  Indeed, Plaintiff's claims are ripe for a threshold dispositive motion because he has not exhausted his administrative remedies.  In fact, at this point, he has not even filed a formal written EEO Complaint with the Commission's Office of Equal Opportunity—an essential predicate to this action.  Further, Plaintiff's Complaint avoids inconvenient facts about his job performance which renders his Complaint even less likely to succeed on the merits.

*Second*, Plaintiff has not shown any irreparable harm that he will suffer in the absence of a preliminary injunction.  Plaintiff's removal from the SES and assignment to a GS-15 position

as the Director of the Commission's New Orleans Field Office has already taken place.  It took place on March 1, 2021.  There is therefore nothing to enjoin.  More importantly, that action resulted in no diminution of Plaintiff's pay.  *See* Ex. 1 at 2.  And although Plaintiff references the ongoing COVID-19 pandemic five times in his Motion, Plaintiff has been advised that he will not be required to relocate to his new duty location in New Orleans until the Commission resumes more normal operations and ceases 100% telework.  *See* Ex. 2 at ¶ 9 (Declaration of Martin Ebel, and Attachment 2 thereto).  Even if Plaintiff's Complaint were not untenable for its effort to avoid the administrative process, Plaintiff faces only a change to his job duties which— in the event he is ultimately successful on his claims—can be remedied by restoration of his former position and other money damages if appropriate.  Plaintiff has thus suffered no irreparable harm because of the Commission's March 1, 2021, actions.

*Lastly*, forcing the Commission to retain an underperforming employee in its highest ranks is not in the public's interest and, in fact, would harm the public.  As noted below, Plaintiff's removal from the SES is the result of his unacceptable performance of his duties, which was evidenced, in part, by his express refusal to participate on the Commission's Vulnerable Workers' Taskforce, an important outreach activity to a public stakeholder constituency.  *See* Ex. 3 (FY2020 Performance Eval.).  Forcing the Commission to retain an underperforming employee in the SES is not in the public's interest.

For these reasons, which are explained in more detail below, Plaintiff's Motion should be denied.

---

[1]     Plaintiff also purports to seek a temporary restraining order.  This request should be denied for the same reasons that a preliminary injunction is inappropriate in this action.

**FACTUAL BACKGROUND**

**A.    *Plaintiff's Former Position and Management at the Agency***

The U.S. Equal Employment Opportunity Commission is an Executive Branch agency consisting of various subdivisions, one of which is the Office of Field Programs ("OFP"). OFP's mission is oversight, guidance, and support of the Agency's 53 field offices located across the country. *See* https://www.eeoc.gov/outreach-and-training-internships-office-field-programs (last visited Mar. 3, 2021). The Office of Field Coordination Programs ("FCP") is a unit within OFP. FCP manages various Agency programs, including the Revolving Fund, Alternative Dispute Resolution (mediation) program, Freedom of Information Act ("FOIA"), as well as the Agency's Outreach and Training programs and Significant Partnership program. *See* Ex. 2 (Declaration of Martin Ebel) at ¶ 4.

During Plaintiff's tenure as FCP Director, FCP also managed the Federal Hearings program and the Intake Investigation Group.[2] While Plaintiff was the Director of FCP, his primary responsibilities included "implement[ing] an organizational vision that integrates key organizational and program goals, priorities, values, and other factors," as well as leading people and managing "financial responsibilities (budget, procurement, facilities, and finances) in a prudent way." *See* Ex. 3 at 2-4. Moreover, because Plaintiff was responsible for managing people and advancing a broad portfolio of the Commission's initiatives with both internal and external groups, a critical element of his position was "building coalitions" among those groups. *Id*. at 4. This involves, among other tasks, soliciting and considering feedback from internal and

---

[2]    Management of the Federal Hearings program and Intake Investigation Group program was removed from the FCP Director portfolio during Plaintiff's tenure in that position. Ex. 4 ¶ 6.

external stakeholders, facilitating an open exchange of opinions, strengthening internal support, and negotiating with internal groups as appropriate. *Id*.

Plaintiff's first-level supervisor was Martin Ebel, Director of OFP. *Id.* at 1. Plaintiff's FY2020 Performance Evaluation—which led to his removal from the SES—was drafted by Mr. Ebel and then reviewed by the Commission's Performance Review Board. *Id*. Plaintiff's FY2020 rating was then revised and issued by the Commission's then-Chair, now Commissioner, Janet Dhillon. *Id*.

**B.      *Plaintiff's Unacceptable Performance in FY2020***

One of the "critical elements" of Plaintiff's FCP Director position was "building coalitions," as described in full below:

> Solicits and considers feedback from internal and external stakeholders or customers. Coordinates with appropriate parties to maximize input from the widest range of appropriate stakeholders to facilitate an open exchange of opinion from diverse groups and strengthen internal and external support. Explains, advocates, and expresses facts and ideas in a convincing manner and negotiates with individuals and groups internally and externally, as appropriate. Develops a professional network with other organizations and identifies the internal and external politics that affect the work of the organization.

Ex. 3 at 4.

But in FY2020, Plaintiff underperformed in this critical element. As articulated in Plaintiff's FY2020 performance evaluation: "there is little evidence of [Plaintiff] building coalitions." *Id*. at 8. The performance evaluation also recited that many of his peers and subordinates decline to work with him, and he had developed "a reputation for not following through on commitments and not completing tasks or assignments on time." *Id*. Indeed, when requested to submit a report of his accomplishments in FY2020 for use in his performance evaluation, Plaintiff did not timely provide that report. *See* Ex. 4 ("Letter of Reprimand"). The

performance evaluation noted that the perceptions of Plaintiff's peers and subordinates "significantly undermines his ability to work effectively with others."  Ex. 3 at 8.

Plaintiff's interpersonal and managerial failings are also referenced in relation to the other "critical elements" of his position, including the elements of "leading change" and "leading people."  *Id*. at 6-7 (noting that Plaintiff took annual leave in the week prior to the single most important conference of the year, which FCP was responsible for managing, and that "[m]any managers will not rely on [Plaintiff] because he is often late and seemingly unresponsive.  Of his employees, only [one] will work with him and other OFP senior staff.").  Plaintiff's final ratings on those elements were Level 3 of 5.  But his final rating for "building coalitions" was Level 1 —unacceptable, which required his removal from the SES.  *Id*.

**C.**    ***Plaintiff is Issued Notice of Removal from the SES, the Effective Date of Which is Extended to March 1, 2021***

On December 14, 2020, then-Commission Chair Janet Dhillon issued Plaintiff a "Notice Of Action – Removal From The Senior Executive Service" (the "Notice").  Ex. 1.  It stated an effective date of January 17, 2021, (later extended to March 1, 2021).  *See* Ex. 2 (Declaration of Martin Ebel Attachment 2 thereto: Email from Medley to Ebel, dated March 1, 2021, ("Confirming that I will begin my assignment in New Orleans today, March 1, 2021.")).

The Notice detailed Plaintiff's many performance deficiencies in FY2020—none of which had anything to do with his race or alleged protected activity.  Ex. 1.  The Notice described how he withdrew from, and refused to participate in, the Commission's Vulnerable Workers' Taskforce and later sought to exclude one of his subordinates from participating as well.  *Id*. at 1.  It also describes a significant failure on Plaintiff's part to "meaningfully participate in or support" the Chair's initiative to expand the Commission's mediation services. *Id*.

- 5 -

Former Chair Dhillon outlined further serious failings in the critical element of building coalitions by describing Plaintiff's "pattern of antagonizing other members of the SES by failing to arrive at meetings at the appointed start time and by failing to provide timely input and deliverables when you have worked with others." *Id*. at 2.  She described how at least three GS-15 staff members asked to stop reporting to Plaintiff due to his unresponsiveness.  *Id*.  Plaintiff's reputation for failing to follow through on commitments and failing to complete tasks on time was self-evident in the development of his FY2020 rating itself.  *Id*.; *see also* Ex. 4 (Letter of Reprimand describing how Plaintiff's "accomplishment report" for FY2020—which was to be used by his supervisor in preparing Plaintiff's FY2020 evaluation—was offered in an incomplete and untimely fashion).

Accordingly, Chair Dhillon concluded that Plaintiff should be rated Level 1 for the critical element of "building coalitions." Ex. 1 at 2; Ex. 3 at 1.  This required his removal from the SES.  Plaintiff was thus reassigned to the position of Director of the Commission's New Orleans Field Office in New Orleans, Louisiana. Ex. 1 at 2.  The Notice specifically recites that Plaintiff's rate of pay would be set at the same rate as his SES pay.  *Id*.  Moreover, the Agency informed Plaintiff that he was not required to relocate to New Orleans considering the ongoing global pandemic and Agency's 100% telework status.  Ex. 2 at ¶ 9 and Attachment 2 thereto (Email from Ebel to Medley, dated March 1, 2021, stating "[a]s I indicated earlier, you will not have to physically report for duty in New Orleans while we remain on 100% telework agency-wide.")

## D.    *Plaintiff Prematurely Initiates this Action*

On March 1, 2021, Plaintiff filed his Complaint initiating this action alleging that he was subject to discrimination, retaliation, and hostile work environment harassment when the Agency

removed him from his SES position and "forced him to relocate to New Orleans."  *See generally* Compl.[3]

## **LEGAL STANDARD**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain one, a movant must make a "clear showing that four factors, taken together, warrant relief."  *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)).  Those four factors are:

> (1) a substantial likelihood of success on the merits, (2) that [the movant] would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Further, when a party seeks a mandatory injunction that would alter the status quo rather than preserve it, as Plaintiff does here, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage will result from the denial of the injunction.'" *Nat'l Conf. on Ministry to Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (quoting *Columbia Hosp. for Women Found. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd* 159 F.3d 636 (D.C. Cir. 1998)).

The D.C. Circuit has in the past applied a "sliding scale" approach to the four factors, holding that "[i]njunctive relief may be granted with either a high likelihood of success and some injury, or vice versa." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).  In 2008, however, the Supreme Court decided *Winter*, which rejected the notion that

---

[3]     As noted above, the Commission has not required Plaintiff to relocate to New Orleans during the global pandemic while the Commission's employees are all in 100% telework status.

"when a plaintiff demonstrates a strong likelihood of prevailing on the merits," a court could enter an injunction on a showing of the "possibility" of irreparable harm.  555 U.S. at 21. Instead, the Court held, a plaintiff seeking preliminary relief must always "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Id.* at 22 (emphasis in the original). Following *Winter*, courts in this Circuit have held that a movant must show that irreparable injury is "likely," regardless of its showing on the merits.  *See, e.g.*, *Singh v. McConville*, 187 F. Supp. 3d 152, 160 (D.D.C. 2016).  The court of appeals, however, has not yet had the opportunity to reconsider the viability of its sliding-scale approach in light of *Winter*.  *See League of Women Voters*, 838 F.3d at 7; *see also Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (noting that *Winter* "could be read to create a more demanding burden").

## ARGUMENT

As demonstrated below, Plaintiff cannot prove substantial likelihood of success, irreparable harm, or that public interests will be furthered.  Thus, his request for injunctive relief must be denied.

I. **PLAINTIFF CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS CLAIMS BECAUSE HE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AND OMITTED CRITICAL, UNFAVORABLE INFORMATION FROM HIS COMPLAINT.**

Plaintiff has not exhausted his administrative remedies regarding the claims alleged in his Complaint.  Accordingly, Plaintiff's Complaint is ripe for a threshold dispositive motion, and Plaintiff cannot show any—let alone a substantial—likelihood of success on the merits of his claims for purposes of this Motion.

---

Ex. 2 ¶ 9.

Under Title VII, a federal service employee like Plaintiff may raise claims of employment discrimination, retaliation, and harassment in federal court only after he has exhausted administrative remedies. 42 U.S.C. § 2000e *et. seq*; 29 C.F.R. §1614.407. In order to initiate the administrative process, an employee must contact an EEO Counselor within 45 days of the alleged discriminatory act and, after a final interview with the counselor, may file a formal administrative complaint within 15 days after receiving a right to file notice. 29 C.F.R. §§1614.105-106. Once a formal administrative complaint has been filed, the employee may not pursue his claims in federal court until the earlier of: (1) a final decision on the complaint; or, (2) 180 days have passed since the filing of the formal complaint. 42 U.S.C. §2000e–16(c); 29 C.F.R. §§1614.108, 1614.407(b). A complaint brought in federal court before such time is premature. *Id.*

A court will deny a motion for a preliminary injunction and dismiss an action when Plaintiff's claims have not been properly exhausted. *Howard v. Evans*, 193 F. Supp. 2d 221, 228 (D.D.C. 2002); *see also Howard v. Gutierrez*, Civ. A. No. 08-0421 (PLF), 2008 WL 11492926, at *2 (D.D.C. Apr. 16, 2008) ("Howard cannot demonstrate that she is likely to succeed on the merits because she has failed to exhaust her administrative remedies."). In *Howard v. Evans*— which concerned essentially the same effort to circumvent the administrative EEO process that Plaintiff attempts here —the tactic was rejected by denying Plaintiff's request for a preliminary injunction and dismissing her complaint when Plaintiff failed to exhaust her administrative remedies:

> [P]laintiff's failure to exhaust administrative remedies before filing the present action against the defendant bars her claim for injunctive relief. *See* 42 U.S.C. § 2000e-16(c). Further, the defendant argues that, in connection with the requirements imposed by 42 U.S.C. § 2000e-16(b), the plaintiff had barely begun to meet with an EEO counselor before initiating the present litigation regarding the relocation of her work station, and that the defendant was not given ample

time to investigate, mediate, and alleviate the situation. *See* Def.'s Mot. for Summ. J. at 16. Accordingly, because the plaintiff's complaint admits, in no uncertain terms, that she did not seek administrative remedies before initiating the current lawsuit, this court must dismiss the plaintiff's complaint since it lacks subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); 42 U.S.C. § 2000e-16(c); *Brown v. General Servs. Admin.,* 425 U.S. at 832, 96 S. Ct. 1961; *Marshall,* 130 F.3d at 1098; *Park,* 71 F.3d at 907-09; *American Bankers Ass'n.,* 38 F. Supp. 2d at 140 (internal quotation omitted).

The court's analysis of the plaintiff's preliminary injunction motion stops here because the court need not determine the viability of the plaintiff's arguments respecting the remaining three prongs of the preliminary injunction standard in light of the rule that a preliminary injunction may only issue when the movant demonstrates a showing that supports *all* four of the preliminary injunction factors previously named. *See Mova Pharmaceutical Corp.,* 140 F.3d at 1066; *CityFed Fin. Corp.,* 58 F.3d at 746; *World Duty Free Americas, Inc.,* 94 F. Supp. 2d at 64.

*Id.* at 228 (internal citations and quotations omitted).  To be sure, "[t]he [exhaustion] requirement is 'not a mere technicality;' rather, the D.C. Circuit has clearly admonished that a district court should not 'allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process.'"  *Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907-09 (D.C. Cir. 1995)).

Applying this standard to Plaintiff's claims, Plaintiff's Complaint is ripe for dismissal. Plaintiff only initiated contact with an EEO counselor on January 29, 2021—a mere 40 days ago.[4]  *See* Ex. 5 (OEO Contact Form).  He has not yet filed a formal written complaint. Accordingly, Plaintiff cannot bring an action premised upon his proposed removal until at least 180 days after he files his formal EEO Complaint (something that has not yet occurred), unless the Commission issues a final decision before that 180 days passes.

---

[4]     Plaintiff did not submit the OEO contact form until February 25, 2021. *See* email from Austin Szabo to Sabrina Carraway, dated February 25, 2021 (transmitting completed OEO contact form, designation of representative and narrative statement).

Plaintiff cannot succeed on the merits of claims that are not even properly before the court.  Therefore, Plaintiff's claims must be dismissed.  *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 22 (D.D.C. 2013) ("Because a final action has not been taken on her complaint, and because 180 days have not passed since she filed the [formal] complaint, her claim is not yet ripe for this Court's review.  Hence, plaintiff has not demonstrated a 'substantial likelihood' of success on the merits.").

Further, courts in this Circuit have denied applications for interim injunctive relief where, as here, Plaintiff seeks to alter, rather than maintain, the status quo.[5]  *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22, 43 (D.D.C. 2010) (dismissing Plaintiff's application for injunctive relief for failure to demonstrate that the Court has authority to issue the requested relief altering the status quo during the pendency of her administrative proceedings.).  Here, Plaintiff's removal from the SES and reassignment to the New Orleans Field Office Director position became effective on March 1, 2021, before Plaintiff had even filed the Complaint in this matter.  At 3:40 AM on that date Plaintiff advised OFP Director Martin Ebel that he accepted the assignment to New Orleans and would be reporting to work remotely.  *See* Ex. 2 (Declaration of Martin Ebel Attachment 2 thereto: Email from Medley to Ebel, dated March 1, 2021, ("Confirming that I will begin my assignment in New Orleans today, March 1, 2021.")).  Despite

---

[5]      The D.C. Circuit has held that a court has jurisdiction to issue interim injunctive relief even though an employee is still pursuing his or her administrative remedies to maintain the status quo of the parties in the litigation and to stave off threats of reprisal for engaging in administrative review of the challenged employment practices.  *See Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987) (affirming denial of motion for preliminary injunction).  Here, however, Defendant does not challenge the Court's jurisdiction to issue interim injunctive relief, but rather argues that an injunction is inappropriate given the deficiencies in Plaintiff's claims.  Moreover, Plaintiff seeks not to maintain the status quo but to compel the Commission to reverse its final decision effectuating Plaintiff's transfer.  Additionally, for the reasons stated below, Plaintiff cannot establish an irreparable harm sufficient to disturb the Commission's regular administrative process.

this, Plaintiff now seeks an injunction requesting that this Court reverse the Commission's decision effectuating his reassignment.   The Court in *Sataki* held that because granting such relief required the Court to *alter* the status quo, Plaintiff there failed to provide a basis for any such relief because his administrative proceedings remain outstanding.   733 F. Supp. 2d at 43 (emphasis added).

Moreover, even setting aside the issue of exhaustion, where a "requested injunction is mandatory—that is, its terms would alter, rather than preserve, the status quo by commanding some positive act" by the defendant—the movant must meet a higher burden. *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 398 (D.D.C. 2020). Specifically, the party seeking a mandatory injunction must "show[] clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Id.*; *see also Capitol Hill Baptist Church v. Bowser*, Civ. A. No. 20-02710 (TNM), 2020 WL 5995126, at *3 (D.D.C. Oct. 9, 2020).   As detailed below, Plaintiff has failed to satisfy this rigorous standard and therefore, any such relief should be denied.

Finally, facts omitted from the Complaint render Plaintiff unlikely to succeed on the merits.   For example, the Complaint fails to address several significant facts set forth in the Notice removing him from the SES.   In the Notice, former Chair Dhillon wrote that Plaintiff "withdrew from an assignment from [his] direct supervisor to participate on the Agency's Vulnerable Workers' Taskforce." Ex. 1 at 1.   Plaintiff avoids reference to this Taskforce in his Complaint.   The Complaint also fails to mention that he "did not meaningfully participate in or support [the Chair's] initiative that introduced a pilot program to expand the agency's mediation services." *Id*.   The Notice also states that Plaintiff "sought to exclude a member of [his] staff from participating on the Taskforce." *Id*.   Thus, although Plaintiff alleges in his Complaint that

he himself was "exclud[ed]" from meetings, emails, discussions, and decisions," it was in truth Plaintiff who excluded himself and sought to exclude his subordinates from working on behalf of this nation's vulnerable workers.

Plaintiff's Complaint similarly fails to address his: "pattern of antagonizing other members of the SES by failing to arrive at meetings at the appointed start time and by failing to provide timely input and deliverables[.]" *Id*. at 2.  Plaintiff cannot blame the Commission's management, or seek recompense, for the fact that during FY2020, "at least three GS-15 staff asked not to report to [him] because of [his] unresponsiveness to them." *Id*.  The fact that Plaintiff is "known for not following through on [] commitments and not completing tasks and assignments on time" is hardly attributable to discriminatory treatment and bears materially on the unlikelihood of success on the merits of his Complaint.  *Id*.

Finally, the Complaint's lamentations about the Reprimand issued to Plaintiff on November 5, 2020, and his FY2020 performance evaluation also omit critical information. Among the examples of misconduct and neglect of duty set forth in that Reprimand, it recites that Plaintiff failed to timely submit his annual "accomplishment report" for his supervisor's use in drafting Plaintiff's FY2020 performance review. Ex. 4 at 1-2. Plaintiff failed to meet a deadline that all fourteen other SES members had met—and in fact, failed to provide his accomplishment report despite multiple extensions he attempted to grant himself for providing this report. *Id*. at 2.  The report Plaintiff eventually provided was self-styled as a "draft" and Plaintiff's supervisor was forced to use this incomplete and untimely "draft" to prepare Plaintiff's FY2020 performance review.  *Id*.  After failing to timely and adequately explain his FY2020 accomplishments to his supervisor, Plaintiff's efforts to label the resulting performance

review as discriminatory speaks directly to why Plaintiff is unlikely to succeed on the merits in this litigation.

## II.      PLAINTIFF CANNOT SHOW IRREPARABLE HARM.

Plaintiff also cannot show irreparable harm.  Where government personnel matters are at issue, courts reserve injunctive relief for extraordinary circumstances.  *Sampson v. Murray*, 415 U.S. 61 (1974); *Wagner v. Taylor*, 836 F.2d 566, 757 n.66 (D.C. Cir. 1987).  This higher standard for government personnel matters acknowledges both the wide latitude afforded the government in conducting its internal affairs and the historical unwillingness to grant equitable relief in employment cases.  *Sampson*, 415 U.S. at 83.

Although *Sampson* established a heightened standard for injunctive relief, the Court did not explicitly define what "extraordinary circumstances" required.  Instead, the Court explained that the employee seeking injunction needs to, "at the very least . . . make a showing of irreparable injury sufficient in kind and degree to override the[] factors cutting against the general availability of injunctions in Government personnel cases." *Id.* at 84.  Notably, insufficient savings or difficulty finding reemployment "will not support a finding of irreparable injury, however severely they may affect a particular individual" as those injuries are "common to most discharged employees and [are] not attributable to any unusual actions relating to the discharge itself." *Id.* at 92 n. 68.

Courts in this Circuit have routinely applied *Sampson*'s higher standard for injunctive relief in Title VII cases brought by federal employees.  *See e.g.*, *Farris v. Rice*, 453 F. Supp. 2d 76, 79-80 (D.D.C. 2006); *see also Sataki*, 733 F. Supp. 2d at 45 (noting that although the D.C. Circuit had not yet "decisively resolve[d]" the issue, "courts in this Circuit have applied a higher standard to motions for preliminary injunctive relief in employment discrimination cases against

the federal government.").  In such cases, courts in this Circuit have recognized that a plaintiff seeking injunctive relief in a Title VII action against the federal government must make "a more stringent showing of irreparable injury." *Bonds v. Heyman*, 950 F. Supp. 1202, 112 (D.D.C. 1997), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

At a *minimum*, the party seeking injunctive relief must demonstrate that the claimed injury is "both certain and great" and that the alleged harm is "actual and not theoretical." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (*per curiam*) (emphasis added).  This Court will not grant an injunction "against something merely feared as liable to occur at some indefinite time." *Clarke v. Off. of Fed. Housing Enter. Oversight*, 355 F. Supp. 2d 56, 65 (D.D.C. 2004) (internal quotations omitted).  Because "the court must decide whether the harm will in fact occur," a party seeking injunctive relief must "substantiate the claim [of] irreparable injury" and "must show that the alleged harm will directly result from the action which the movant seeks to enjoin." *Id*. (emphasis in original).  An injury is irreparable only if it is "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 298 (D.C. Cir. 2006).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Clarke,* 355 F. Supp. 2d at 65. Further, a movant's failure to show any irreparable harm alone will be sufficient grounds for refusing to issue a preliminary injunction, "even if the other [] factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches,* 454 F.3d at 297.

Here, Plaintiff fails to meet either the stringent *Sampson* standard or even the lesser, traditional standard of irreparable injury.  Plaintiff has not shown that "the injury complained of

- 15 -

is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wis. Gas*, 758 F.2d at 664 (quoting *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C. 1976) (citations and internal quotations omitted)).  Mere "allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Id.* (emphasis in original).  Plaintiff's Motion fails to explain how he has suffered irreparable injury.  Plaintiff's conclusory contention that his transfer will "significantly harm his future career trajectory and planned retirement" constitutes an insufficiently imminent harm; one which is "merely feared as liable to occur at some indefinite time" and therefore insufficient to warrant enjoining.  *Clarke*, 355 F. Supp. 2d at 65.

Further, Plaintiff's contention that violation of a civil rights statute is *per se* grounds for irreparable harm is mistaken.  Plaintiff relies on the Fifth Circuit's decision in *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1090-91 (5th Cir. 1987) as the basis for this contention—a case which is not binding precedent in this Circuit.  Moreover, the Court's ruling in *Cosmair* involved a challenge to the implementation of a company-wide policy on the use of waivers, or releases, of claims of employment discrimination, neither of which are at issue here.

Plaintiff also cites to a string of decisions from courts in this Circuit—*Bonds v. Heyman,* 950 F. Supp. 1202, 1214-15 (D.D.C. 1997), *Neal v. Dep't of Corr.,* 1996 U.S. Dist. Lexis 7967, at *10 (D.D.C. 1996) and *Segar v. Civiletti,* 516 F. Supp. 314, 320 (D.D.C. 1981)—to support his contention that the mere allegation of retaliation is sufficient to constitute irreparable harm. However, subsequent rulings in *Jordan v. Evans,* 355 F. Supp. 2d 72, 76 (D.D.C. 2004) and *Sataki*, 733 F. Supp. at 42, have distinguished this line of cases and held that where a plaintiff's prospects of success on the merits are, as here, slim, there may be no showing of irreparable injury that would entitle him to injunctive relief.  *Evans,* 355 F. Supp. 2d at 84 (citing *Taylor v.*

*Resolution Trust Corp.,* 56 F.3d 1497, 1507 (D.C. Cir. 1995)).  In fact, the Court in *Evans* held

that issuance of injunctive relief in such a circumstance would cause substantial harm to the

government by impeding its efforts to make personnel decisions.  *Id*.

  Even if the injuries Plaintiff alleges in his Motion were supported by some evidence

(which they are not), they do not constitute irreparable harm.  Plaintiff's alleged injuries are

purely speculative.  As indicated above, Plaintiff contends that his removal from the SES will

significantly "harm his future career trajectory and planned retirement, harm his reputation, and

harm his health." Motion at ¶ 9.  These claimed harms are neither certain nor imminent.  They

are merely speculation unsupported by evidence.  Such unsupported allegations "cannot possibly

provide a sufficient basis for injunctive relief."  *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d

1, 4-5 (D.D.C. 1998) (denying motion for preliminary injunction where plaintiff alleged he was

improperly terminated, finding that he failed to establish irreparable harm where he merely

alleged irreparable harm without support or explanation: "If the bare allegations of irreparable

injury that Mr. Nichols has marshaled could justify interim injunctive relief, the federal

government would be paralyzed from taking necessary personnel action every time an employee

believed that his or her termination or involuntary separation was animated by discriminatory or

retaliatory animus.") (citations omitted); *Brodie v. Dep't of Health & Human Servs.*, 715 F.

Supp. 2d 74, 84 (D.D.C. 2010) (a plaintiff's "vague and unsupported assertions of harm are not

sufficient" for a finding of irreparable harm that justifies injunctive relief); *Brown v. District of

Columbia*, 888 F. Supp. 2d 28, 33 (D.D.C. 2012) (denying preliminary injunctive relief, in part,

because the "plaintiff fail[ed] to present any evidence that, absent injunctive relief, her

professional reputation or ability to obtain future employment will be irreparably harmed beyond

notional assertions that they w[ould]").

Further, Plaintiff must establish injury that is "beyond remediation." *Chaplaincy of Full Gospel Churches,* 454 F.3d at 297. The corollary to these principles is that monetary injury is almost never sufficient to demonstrate irreparable harm, and the possibility of compensatory relief will refute any inference of irreparable harm.   As the D.C. Circuit made clear in *Chaplaincy of Full Gospel Churches*:

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

454 F.3d at 297–98 (citing *Wis. Gas*, 758 F.2d at 674).

Most notably in this regard, Plaintiff will not even suffer any immediate monetary injuries as a result of his removal and reassignment.  As set forth in the Notice Of Action, Plaintiff's removal from the SES and reassignment to a different position will come with no change to his pay whatsoever.  Ex. 1 at 2.  Plaintiff's job title and job description are changing, but such is far from irreparable harm.

To the extent that Plaintiff speculates about lost earnings, such damages would, if proven, be recoverable during the ordinary course of Title VII litigation.[6]  *Sampson,* 415 U.S. at 90 ("mere injuries, however substantial in terms of money . . . are not enough" to show irreparable harm); *see also, e.g., Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C.2006); *Veitch v. Danzig*, 135

---

[6]     In weighing "irreparable harm," the *Sampson* Court cited the legislative history of the Back Pay Act and concluded that the availability of back-pay to terminated government employees weighed against the existence of irreparable harm:  "an agency or department of the Government may remove any employee at any time, but [] the employee shall then have a right of appeal.  When he is removed, he is of course off the pay roll.  If he wins the appeal, it is provided that he shall be paid for the time during which he was suspended." *Sampson*, 415 U.S. at 90 (citation omitted).  Although *Sampson*'s citation was to the Back Pay Act, Title VII allows not only a back-pay remedy, but also compensatory damages and attorney fees should the Title VII plaintiff prevail, further repudiating the need for any injunctive relief.

F. Supp. 2d 32, 36–37 (D.D.C. 2001) (finding no irreparable harm where alleged harm was "loss of salary and benefits, as well as damage to . . . professional reputation," as those types of harm are "typical in instances of the termination of any government employee").

Finally, Plaintiff's claimed injuries to his retirement and health due to his transfer to New Orleans are speculative and not irreparable. First, the Agency has not demanded immediate relocation and Plaintiff will be permitted to continue to work remotely while the Commission remains in full-time telework status during the COVID-19 Pandemic. Ex. 2 at ¶ 9 (and attachment 2 appended thereto). Plaintiff's removal from the SES will not impact his retirement or his years of federal service. Although he claims such, he has not articulated how removal from the SES would have an immediate, irreparable impact such that an injunction would be warranted.

Further, Plaintiff's alleged injury is not "beyond remediation" without preliminary injunctive relief because even if his former position as Director of FCP is filled before this case concludes, the Court still has the equitable power to reinstate the Plaintiff back into his former position, or a comparable position assuming one is available, if he prevails on the merits. *See Davis v. Billington*, 51 F. Supp. 3d 97, 114 (D.D.C. 2014) ("[T]he Court has not yet foreclosed the possibility of reinstatement."). Therefore, any potential harm resulting from his transfer may be adequately addressed through monetary damages and or future relief by the Court.

As such, the types of injuries Plaintiff alleges do not constitute irreparable harm. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date,

in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Nichols*, 18 F. Supp 2d at 4.

  To meet his burden here, Plaintiff offers nothing but his conclusory allegations that he will sustain irreparable harm without even a scintilla of supporting evidence.  Plaintiff cannot show that without the requested injunctive relief, he would suffer irreparable harm.  Plaintiff's request for such injunctive relief should thus be denied.

## III. GRANTING PLAINTIFF INJUNCTIVE RELIEF WOULD HARM DEFENDANT AND SERVE NO PUBLIC INTEREST.

  Finally, the U.S. Supreme Court has stressed the importance of granting the government "the widest possible latitude in the dispatch of its own affairs." *Sampson,* 415 U.S. 61, 83.  If Plaintiff's request for injunctive relief were granted, the Agency's ability to make the most fundamental personnel decisions in dispatching its affairs would cease.  Maintaining an underperforming employee—with whom others refuse to work due to his unresponsiveness, and who cannot be relied upon to submit work product by clearly established deadlines—in the highest ranks of the agency hardly serves the public interest.  If Plaintiff were successful on this Motion, the Commission would be compelled to retain him in a leadership role despite his demonstrated disregard for his co-workers and the public interest.  *See* Ex. 1 (reciting Plaintiff's withdrawal from a Vulnerable Workers' Task Force and failure to "meaningfully participate" in an initiative to expand the Commission's mediation services).  An injunction would thus fail to serve a public interest.

*  *  *

## **CONCLUSION**

For all the foregoing reasons, Plaintiff's request for a Temporary Restraining Order and/or a Preliminary Injunction should be denied.

Respectfully submitted,

Dated: March 10, 2021
     Washington, DC

CHANNING D. PHILLIPS
D.C. Bar #415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: */s/ Diana V. Valdivia*
    DIANA V. VALDIVIA
    D.C. Bar # 1006628
    Assistant United States Attorney
    555 4th Street, N.W.
    Washington, DC 20530
    (202) 252-2545
    diana.valdivia@usdoj.gov

*Counsel for Defendant*